[Civ. No. 6687. Second Appellate District, Division One.—July 10, 1929.]

ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE CO., LTD. (a Corporation), Petitioner, v. DIVISION OF INDUSTRIAL ACCIDENTS AND SAFETY and BENJAMIN H. CAVERLY, Respondents.

J. L. Kearney for Petitioner.

G. C. Faulkner for Respondents.

CONREY, P. J.—Benjamin H. Caverly filed with respondent Division of Industrial Accidents and Safety an application for an award of compensation for injuries arising out of and occurring in the course of his employment. He named as defendants, Arthur White, West Coast Mortgage and Investment Company and Zurich General Accident and Liability Insurance Co., Ltd. In making its award the Division found that the injury was received while Caverly was employed as a mechanic by "Arthur White, doing business as White Garage," as his ostensible employer and as

agent for West Coast Mortgage and Investment Co., a corporation, an undisputed principal; that at that time the Zurich Company was the insurance carrier for "Arthur White, doing business as White Garage." The Division made its award against the insurance carrier, and the West Coast Mortgage and Investment Co.; and discharged "Arthur White, doing business as White Garage," from liability. The Zurich Company petitions for the writ of review.

Petitioner had issued a policy of insurance to "Arthur White, doing business as the White Garage." Petitioner contends that the Division exceeded its jurisdiction in this: that there is no evidence to sustain the finding that Arthur White was Caverly's employer; and further contends that the evidence without conflict shows that the real employer was the West Coast Mortgage and Investment Company, which company, as the findings declare, was uninsured. We have examined the evidence set out on page three of the petition, which petitioner states is practically all of the evidence bearing upon the stated question. We have further examined the answer to the petition, which more fully sets forth the evidence relating to that question. Caverly stated that at the time of his employment he talked to one McIntyre, who was then manager of the White Garage, and also to Mr. White. In substance his statement is that he was given the job at seventy-five cents an hour for his work; and that there were no other terms. Mr. White testified that his business was that of manager of the West Coast Mortgage and Investment Company; that his arrangement with Caverly was that Caverly was to run the shop on the basis of fifty per cent of his labor. He testified that he was not an owner of the garage and had nothing to do with it, and that it was always owned by the corporation, of which corporation he was the president and manager. The real contention of White before the Division, as may be seen from his testimony, was that Caverly was an independent contractor and was not an employee of either the Investment Company or the White Garage. Over the door of the shop there was a sign reading: "White Garage." White testified that there was nothing there that would lead anyone to believe that the West Coast Mortgage and Investment Company was identified with the concern, or that he himself was so identified. In other words, the fact

seems to be that when Caverly was employed, and during the period of his employment, the place was operated simply as "White Garage," and that Mr. White as the. person in charge of the premises was the ostensible owner, and acting under that appearance and under those circumstances, employed Caverly to work in the shop.

We think that the evidence is sufficient to warrant the finding of the Division that White was the actual employer. If in fact in his operation of the business he was representing an undisclosed principal, nevertheless he was, as to Caverly, occupying the actual relation. of employer and could be held responsible as such employer. (*Geary St. etc. R. R. Co.* v. *Rolph*, 189 Cal. 59, 64 [207 Pac. 539].) It follows that Caverly was protected by the insurance policy issued to White for the purposes of that business.

The petition for writ of review is denied.

Houser, J., and Hollzer, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 5, 1929, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 3, 1929.

All the Justices present concurred.